the premises should be insured, and that the respondent company had fair and ample notice of such intention that he desired to have his interest in the property insured by good, effectual policies; but he does not allege that he requested that any such policies should be issued to him, or that any other alteration should be made in the policy issued to the grantees of the bankrupt, than what was subsequently made by the company before the policy was delivered to him as such trustee.

They immediately wrote in the policy, or caused to be written, as follows: "Payable in case of loss to Joseph F. Dean, trustee," and forwarded the policy to the complainant; and he alleges that "believing, and having good cause to believe, that said policy insured his interest in said premises, he accepted the same;" that what the complainant wanted was, that in case of loss the insurance should be payable to him, as the trustee of the bankrupt's estate, and that was fully accomplished by the amendment inserted in the policy. Neither party made any mistake in that transaction, and the only mistake subsequently made was that made by the complainant in taking a conveyance from the parties in whose names the policy was issued, without securing the assent of the insurance company. Had he done that, no controversy would ever have arisen.

Plainly it was not a mistake of the company in writing the policy, but of the complainant in allowing the title of the property to be changed without complying with the following condition of the policy: "If the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in title or possession, except in case of succession by reason of the death of the assured, whether by legal process, judicial decree, or voluntary transfer or conveyance . . . then and in every such case the policy shall be void." Conditions of the kind are frequently inserted in policies, and though they often operate with great severity, still they are obligatory in case they are not waived by the company.

It is said that the conveyance was without consideration, but that cannot make any difference, as the formal title was changed before any loss occurred. Written agreements, whether executory or executed, may be reformed in equity courts where there is a material mistake of fact. In all such cases, says Story, if the mistake is clearly made out, by proofs entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief upon the ground that the written paper ought to be treated as a full and correct expression of the intent of the contracting parties, until the contrary is established beyond reasonable controversy. 1 Story, Eq. Jur. § 152; Adams, Eq. (3d Am. Ed.) 171; Andrews v. Essex Fire & Marine Ins. Co. [Case No. 374]. Apply those rules to this case and it is clear that the complainant is not entitled to any relief.

Demurrer sustained and bill of complaint dismissed.

## Case No. 3,706.

DEAN v. EQUITABLE FIRE INS. CO.

[See Case No. 3,705.]

## Case No. 3,707.

### DEAN v. FLANNERY.

[Cited in Wilson v. Turberville, Case No. 17,-842. Nowhere reported; opinion not now accessible.]

## Case No. 3,708.

### DEAN v. HARVEY.

[Cited in Cuyler v. Ferrill, Case No. 3 523. Nowhere reported; opinion delivered orally, and not now accessible.]

DEAN (HINES v.). See Case No. 6,519.

## Case No. 3,709.

### DEAN v. LEGG et al.

[1 Cranch, C. C. 392.][1]

Circuit Court, District of Columbia. April Term, 1807.

CHANCERY ATTACHMENT — SERVICE OF PROCESS— VIRGINIA STATUTE.

In a chancery attachment, if the subpoena be served on the principal, the bill cannot be taken for confessed for non-appearance, as in ordinary cases in equity; but there must be an affidavit and publication, &c., according to the act of Virginia, p. 115.

Mr. Taylor (as amicus curiae) suggested that the court could not take the bill for confessed, nor proceed to decree against Legg. The subpoena was served on Legg, and the bill, having been filed three months, was taken for confessed. The debt was due from Legg to the plaintiff on promissory notes under seal. The bill states, in the usual form, that the defendant Legg is a non-resident of the District of Columbia, and cannot be found so as to be served with process. At the expiration of three months after the filing of the bill and service of the subpoena, the bill was taken for confessed at the rules. There was no affidavit of non-residence and no order of publication. There was an agreement between the plaintiff's counsel and James Legg, by which the attached effects were released, and possession of the wagon

[1] [Reported by Hon. William Cranch, Chief Judge.]